FILED

ltas

OCT 3 0 2018

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                        )    Case No. 16-24559-B-13
                              )
STEVEN CRAIG SIPE,            )    DC No. LES-1
                              )
                              )
              Debtor(s).      )
_____)


<u>MEMORANDUM DECISION AFTER EVIDENTIARY HEARING</u>


<u>Introduction</u>

An evidentiary hearing concerning the turnover of property of the estate under 11 U.S.C. § 542(a) was held on October 15, 2018. Appearances were noted on the record.

The evidentiary hearing arises out of a motion for relief from the automatic stay, 11 U.S.C. § 362(a), that James A. and Judith M. Carter, Trustees Revocable Trust Agreement of May 23, 1996 ("Carter Trust"), filed on April 17, 2018. Through that motion the Carter Trust sought to dispose of a large quantity of personal property that debtor Steven Sipe left behind on real property he leased from the Carter Trust after the lease was terminated and possession of the premises restored to the Carter Trust. The debtor's response to the Carter Trust's motion characterized the personal property as exempt property and/or property of the estate. The debtor asserted that the Carter

1  Trust could not dispose of that property and, in fact, it was
2  obligated to deliver it to him.

3       Having heard testimony, reviewed and considered exhibits,
4  and listened to oral argument, the court issues its findings of
5  fact and conclusions of law in this memorandum decision. <u>See</u>
6  Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052, 9014(c). The
7  court's pretrial rulings stated on the record in open court are
8  also incorporated into and made a part of this memorandum
9  decision. And the court takes judicial notice of the dockets in
10 this Chapter 13 case and the debtor's prior Chapter 13 case -
11 Case No. 16-22518.

12

13 <u>**Findings of Fact**</u>

14      The Carter Trust owns two adjacent parcels of real property
15 located at 9700 Hillview Road, Newcastle, California, identified
16 as Assessor's Parcel Numbers 040-320-011-000 and
17 040-320-017-000. Both parcels combined are approximately 8.68
18 acres.

19      On or about February 13, 2015, the Carter Trust, as lessor,
20 entered into a written lease ("Lease") with the debtor
21 individually and dba Sipe's Tahoe, as lessee, for the lease of
22 APN 040-320-017-000 (the "Newcastle Proprety"). The Lease had an
23 expiration date of August 12, 2016.

24      During the debtor's occupancy of the Newcastle Property, and
25 with the knowledge and consent of the Carter Trust, the debtor
26 accumulated a collection of personal property consisting

27

28                          - 2 -

generally of used wooden fruit containers/trays, used bricks, old machinery and vehicles including, but not limited to, a semi-tractor, a cargo trailer, a conveyor system, a horse trailer or personnel transport, a recreational vehicle, a rusted asphalt truck, and a crane (collectively, "Personal Property"). The debtor testified that these items were raw materials he used in the business he owned and operated for the last thirty years. The debtor described that business as home and business remodeling and renovation, furniture and household item manufacturing, art piece creation, interior designs, and trades in antiques.

After the debtor failed to make a rent payment due March 1, 2016, he was served with a three-day notice to pay rent or quit on March 14, 2016. The debtor failed to make the required rent payment, and on April 13, 2016, the Carter Trust commenced an unlawful detainer proceeding. Thereafter, the debtor filed his first Chapter 13 case on April 20, 2016. That Chapter 13 case was dismissed on May 23, 2016.

On June 20, 2016, the Carter Trust obtained an unlawful detainer judgment for possession of the Newcastle Property and damages, and had a writ of possession issued. The writ of possession was enforced by the Placer County Sheriff on June 29, 2016, and possession of the Newcastle Property was restored to the Carter Trust.

Under the terms of the writ of possession, the debtor had fifteen days, or until July 13, 2016, to remove the Personal

- 3 -

1    Property from the Newcastle Property before the Carter Trust
2    could sell or otherwise dispose of it under state law.  However,
3    on July 13, 2016, the debtor filed the petition that commenced
4    his second (and the present) Chapter 13 case.  That petition
5    caused the automatic stay of § 362(a) of the Bankruptcy Code to
6    go into effect which prevented the Carter Trust from taking
7    further action to remove the Personal Property from the Newcastle
8    Property or otherwise dispose of it.  However, because the debtor
9    filed two bankruptcy cases within the span of one year and his
10   prior case was dismissed the automatic stay terminated by
11   operation of law on August 12, 2016.

12        The debtor testified that he was in the process of
13   rebuilding his business when he filed the petition that commenced
14   his second Chapter 13 case.  The debtor now operates his business
15   through RWD Designs, a Nevada corporation of which he is the
16   President, Secretary, Treasurer, and Director.  And although RWD
17   Designs does not currently engage in retail sales, the debtor
18   testified that it has engaged in some sales and other
19   transactions that have generated income used to compensate the
20   debtor through draws and loans.  The debtor also testified that
21   RWD Designs would buy the Personal Property from the debtor and
22   it has the financial ability to do so.

23        At or around the July 2016 petition date the debtor also
24   managed to remove some bricks, wood, and other items from the
25   Newcastle Property.  Those items are currently stored at the home
26   of the debtor's nonbankrutpcy attorney, a warehouse in Auburn,
27
28                                - 4 -

1   California, and a 2-acre parcel in Reno, Nevada.

2        There is some dispute over the extent of the debtor's access
3   to the Newcastle Property to remove the Personal Property after
4   July 2016.  The debtor testified he was locked out and his access
5   to the Newcastle Property was severely restricted.  Judith Carter
6   testified that the debtor was allowed to access the Newcastle
7   Property during normal business hours.

8        What is clear is that the debtor made very little effort to
9   remove the Personal Property from the Newcastle Property after
10  July 2016 and after he was given unrestricted court-ordered
11  access between the hours 9:00 a.m. and 5:00 p.m. seven days a
12  week from May through mid-August of 2018.[1]  By the same token,
13  the Carter Trust allowed the Personal Property to remain on the
14  Newcastle Property long after the automatic stay terminated in
15  August of 2016.  In fact, although Ms. Carter allowed or
16  authorized some of the debtor's bricks to be taken off-site
17  sometime in February 2017, at about the same time she also
18  allowed or authorized the bulk of the Personal Property to be
19  moved to and rearranged on a rear portion of the Newcastle
20  Property where it has remained and currently remains.

21

22  _____

        [1]The debtor testified that he was unable to remove the
23  Personal Property during this period because he was not given
    access to it.  The court gives little weight to that testimony.
24  Karen Bruce, an attorney with the Chapter 13 Trustee's office,
    testified that she recently inspected the Newcastle Property and
25  was able to access a significant portion of the Personal Property
    by vehicle at a point where removal of some items would have
26  opened up additional space and provided progressive access to
    other (and larger) items.
27

28                              - 5 -

1   It is also clear that the debtor lacked the means to remove
2   the bulk of the Personal Property from the Newcastle Property,
3   the means to transport it to another location, and another
4   location to store it all following its removal.  For example,
5   Douglas Bigley testified that vehicles with fluids such as oil
6   and anti-freeze could be removed from the Newcastle Property only
7   with special permits which the debtor lacked.  Mr. Bigley also
8   testified that much of the personal property could be removed
9   only with large trucks or other transportation vehicles referred
10  to as "lowboys" which the debtor also lacked and did not arrange
11  for.  And in any event, the debtor testified that he did not
12  secure additional space to store whatever Personal Property that
13  may have been removed.

14  The primary dispute concerns the Personal Property's value.
15  More precisely, whether the Personal Property is of
16  inconsequential value and benefit.

17  Mr. Bigley testified at the Personal Property's present
18  value following a recent inspection of it as it currently sits on
19  the Newcastle Property.  Based on that inspection, and based on
20  his experience in reclaiming and removing similar-type property,
21  Mr. Bigley testified that in its current condition the Personal
22  Property is essentially worthless and could only be sold as
23  scrap.  He also testified that the cost of removal,
24  transportation, delivery to the debtor, or an alternative on-site
25  disposal is likely to equal or exceed any scrap value.  Mr.
26  Bigley did not testify as an expert.

27

28                              - 6 -

Although the debtor's testimony regarding value differed somewhat from the $200,000.00 value listed in the Schedules, it more closely approximates the Personal Property's value at or around the July 2016 petition date. For example, according to the debtor, cleaned and processed bricks have value of .75 cents. But the debtor's bricks were not cleaned and were unprocessed. The debtor paid $7,500.00 for his bricks. What remains after an apparent removal of some of the bricks in February 2017 is worth approximately $500.00

The debtor had 776 pallets of fruit trays. He paid between $1.50 and $2.00 per tray for many and many were given to him for free. Each pallet has between 33 and 35 trays. Using an average of 34 trays per pallet times 776 pallets equal 26,384 trays. The debtor testified that he recently sold, cleaned, and processed trays for $18.00; however, he also testified that many of the trays were dirty, broken, and scattered. Allocating for the condition of the trays, $1.50 per tray equals $39,576.00. That figure, however, must be further discounted by the debtor's testimony that he paid for "many" trays and that "many" were given to him for free. Based on the equality in the debtor's description of the manner of acquisition, the court further discounts the value of the trays by fifty percent to $19,788.00.

The debtor testified that there were approximately 32 "truckloads" of miscellaneous lumber, beams, and logs generally described as reclaimed wood on the Newcastle Property valued "at today's value" at between $1.00 and $5.00 per board foot. Each

- 7 -

truckload was estimated to be 8,000 board feet meaning there would have been 256,000 board feet at or around the July 2016 petition date. However, the debtor also testified that value of this lumber is "very dependent on condition and usability" and "[t]he total value in raw material on the day of filing was quite modest[.]" Consistent with its modest value the debtor valued it at $18,000.00 in his Schedule A/B at Docket 24.

As to machinery, vehicles, and scrap metal, the debtor testified it had an estimated value of $9,300.00. Inasmuch as the debtor and Mr. Bigley both testified as to the inoperable condition of the tractor-trailer, the recreational vehicle, and many of the other mechanical and machinery items, the court includes those and all other non-wood and non-brick items in this category.

**Conclusions of Law**

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (E). Venue is proper pursuant to 28 U.S.C. § 1409(a).

The evidentiary hearing, and matters related to, it concern § 542 of the Bankruptcy Code which, in pertinent part, states as follows:

> (a) ... an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the

value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

The principle behind § 542(a) is straightforward:  As of the date of filing the bankruptcy petition, noncustodial entities with notice of a bankruptcy case holding estate property have an obligation to deliver that property to the trustee and to account for the property delivered or its value unless the property in question is of inconsequential value or benefit to the bankruptcy estate.  See 4 March, Ahart and Shapiro, <u>California Practice Guide: Bankruptcy</u>, ¶ 21:1671 at 21-186, ¶ 21:1710 at 21-192 (2014).  That obligation is an affirmative one, it is self-executing, and it does not require a hearing or an order from the bankruptcy court.  <u>In re Rutheford</u>, 329 B.R. 886, 892 (Bankr. N.D. Ga. 2005); <u>see also</u> <u>APJL Consulting, LLC v. Treasures, Inc. (In re Treasures, Inc.)</u>, 2015 WL 925957, *21 (9th Cir. BAP 2015).  Moreover, actual possession at the time of a turnover proceeding is not necessary because a noncustodial entity is liable for all property in its possession at any time during the bankruptcy case, or the value of such property.  <u>Shapiro v. Hensen</u>, 739 F.3d 1198, 1202 (9th Cir. 2014).

The affirmative obligation to deliver property of the estate and account for it or its value is slightly different in this case.  Debtors in Chapter 13 cases are vested with all the rights and powers of a trustee under § 363(b), (d), (e), (f), (l).  <u>See</u> 11 U.S.C. § 1303.  That means, here, the debtor rather than the trustee is entitled to use and control property of the estate and

- 9 -

1  that also means the debtor has standing to seek turnover of such

2  property.  In re Peterson, 585 B.R. 1, 11 (Bankr. D. Conn. 2018)

3  (citations omitted); In re Denby-Peterson, 576 B.R. 66, 75

4  (Bankr. D. N.J. 2017) (citations omitted); see also Gallagher v.

5  Dockery (In re Gallagher), 2014 WL 998411, *5 (9th Cir. BAP

6  2014)(holding the bankruptcy court erred as a matter of law when

7  it granted the chapter 13 trustee turnover rights under § 542).

8      As the party seeking turnover, the debtor "has the burden of

9  proving the estate is entitled to turnover." Wolfe v. Jacobson

10  (In re Jacobson), 676 F.3d 1193, 1200-01 (9th Cir. 2012)

11  (citation omitted).  That burden of proof requires the debtor to

12  establish, by a preponderance of the evidence, that: (1) the

13  property sought is in the possession, custody, or control of a

14  noncustodial third party entity; (2) the property constitutes

15  property of the estate; (3) the property is of the type that

16  could be used, sold, or leased under § 363 or exempted under §

17  522 of the Bankruptcy Code, and (4) the property is not of

18  inconsequential value or benefit to the estate.  In re Sapphire

19  Resources, LLC, 2016 WL 320823, *5 (Bankr. C.D. Cal. 2016)

20  (citation omitted).  For the reasons explained below, the court

21  concludes that the debtor has satisfied that burden.

22      The term "entity" includes a person, estate, trust,

23  governmental unit, and the United States trustee.  11 U.S.C. §

24  101(15).  The court concludes that the evidence establishes that

25  the Carter Trust is a trust and, therefore, an entity that was,

26  on the July 2016 petition date and at all times thereafter

27

28                              - 10 -

1   through the present, in possession of the Personal Property.

2   There is no evidence that the Carter Trust is (or was) a

3   custodian as defined under § 101(11) of the Bankruptcy Code.[2]

4   Therefore, the first § 542(a) element is satisfied.

5       In reaching this conclusion, the court rejects the Carter

6   Trust's argument that its possession of the Personal Property was

7   involuntary.  This Chapter 13 case is the debtor's second Chapter

8   13 case filed within the span of one year after a prior Chapter

9   13 case was dismissed.  As the court previously explained in an

10   exhaustive analysis included in its ruling on the Carter Trust's

11   motion for relief from the automatic stay, under § 362(c)(3)(A)

12   the automatic stay of § 362(a) expired in its entirety by

13   operation of law on August 12, 2016.  See Dockets 110, 111.  Had

14   the debtor remained on the Newcastle Property at that point he

15   could have been removed through state law procedures.  The same

16   is true with regards to the Personal Property.  In other words,

17   if the debtor could have been removed from the Newcastle Property

18   when the automatic stay was no longer in effect then so too could

19

20

---

21   [2]11 U.S.C. § 101(11) states:

22   The term 'custodian' means—(A) receiver or trustee of
    any of the property of the debtor, appointed in a case
    or proceeding not under this title; (B) assignee under

23   a general assignment for the benefit of the debtor's
    creditors; or (C) trustee, receiver, or agent under

24   applicable law, or under a contract, that is appointed
    or authorized to take charge of property of the debtor

25   for the purpose of enforcing a lien against such
    property, or for the purpose of general administration

26   of such property for the benefit of the debtor's
    creditors.

27

28                   - 11 -

1  the Personal Property that remained on the Newcastle Property.
2  But that is not what happened here.
3      That Ms. Carter allowed some of the debtor's bricks to be
4  removed from the Newcastle Property in February 2017 leaves no
5  doubt that the Carter Trust understood it could remove the
6  Personal Property from the Newcastle Property after August 12,
7  2016.  Yet, for a significant time thereafter, the Carter Trust
8  allowed the Personal Property to remain on the Newcastle
9  Property.  In fact, at around the same time the bricks were
10 removed Ms. Carter also allowed or authorized the bulk of the
11 Personal Property to be moved to and stored on the rear portion
12 of the Newcastle Property.  The Carter Trust took no further
13 action to remove the Personal Property until April 2018 when it
14 filed its motion for relief from the automatic stay.  Thus, what
15 may initially have been an involuntary possession of the Personal
16 Property because of the automatic stay became a voluntary
17 possession after the automatic stay expired and thereafter at
18 least February 2017.
19     With regards to the second § 542(a) element, the court
20 previously determined that the Personal Property is property of
21 the estate.  See Dockets 110, 111.  No party appealed or
22 otherwise sought reconsideration of that determination.  In any
23 case, the determination that the Personal Property is proprety of
24 the estate is now final and applicable here.  Therefore, the
25 court concludes that the second § 542(a) element is satisfied.
26     The third § 542(a) element is also satisfied.  The debtor
27
28                              - 12 -

operates his business through RWD Designs.  And although the
Personal Property belongs to the debtor, the debtor testified
that he could sell the Personal Property to RWD Designs and that
RWD designs would (and could) buy the Personal Property from the
debtor for use as raw materials.

That leaves the final § 542(a) element, *i.e.*, whether the
Personal Property is of inconsequential value and benefit.  In
making this determination, the court is entitled to form its own
opinion of value.  <u>In re Patterson</u>, 375 B.R. 135, 144 (Bankr.
E.D. Pa. 2007).  Indeed, the court has considerable flexibility
in resolving valuation issues.  <u>Fin. Sec. Assurance Inc. v. T-H</u>
<u>New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)</u>, 116
F.3d 790, 799 (5th Cir. 1997).

The valuation of property is not an exact process.  <u>See</u>
<u>Boyle v. Wells (In re Gustav Schaefer Co.)</u>, 103 F.2d 237, 242
(6th Cir), <u>cert. denied</u>, 308 U.S. 579 (1939) ("The valuation of
property is an inexact science and whatever method is used will
only be an approximation[.]").  For example, paint is valued as
paint until it is incorporated into a portrait and becomes a Mona
Lisa.  So although the debtor may be an artist and a self-
proclaimed visionary who can use the Personal Property as raw
materials to create valuable art, until that happens the court
values the Personal Property as raw materials and not as a
masterpiece.

Turning to the Personal Property, whether it is of
inconsequential value or benefit is determined as of the petition

- 13 -

1   date.  In re McWhorter, 37 B.R. 742, 744 (Bankr. S.C.

2   1984)(valuing property subject to turnover as of petition date);

3   In re Marcella, 2009 WL 3348251, *11 (Bankr. D. Mass 2009) ("In

4   accordance with § 542(a), the estate's interest in the Property

5   is measured as of the Petition Date. 11 U.S.C. § 542(a).").

6   Here, through his lay opinion testimony and the Schedules, the

7   debtor provided the only evidence of value at or close to the

8   petition date.  See Fed. R. Evid. 701.  The court may accept the

9   debtor's lay opinion testimony of value as conclusive in the

10  absence of contrary evidence.  Enewally v. Washington Mut. Bank

11  (In re Enewally), 368 F.3d 1165, 1173 (9th Cir. 2004).  Schedules

12  also have evidentiary value.  See Perfectly Fresh Farms, Inc. V.

13  U.S. Dept. Of Agric., 692 F.3d 960, 969 (9th Cir. 2012).

14  Therefore, for purposes of this proceeding, the court values the

15  Personal Property at $54,588.00.  The court further concludes

16  that value is not of inconsequential value and benefit.

17       In reaching its conclusion that the Personal Property is not

18  of inconsequential value and benefit, the court rejects the

19  Carter Trust's argument that removal, transportation, and

20  delivery costs must be considered and factored into the analysis.

21  There apparently is some out-of-circuit authority that may

22  support such an argument.  See In re Janmar, 4 B.R. 4, 10-11

23  (Bankr. N.D. Ga. 1979) (stating that entity in possession need

24  only tender possession to satisfy its burden which implies that

25  recovery costs are estate's responsibility).  However, that out-

26  of-circuit authority conflicts with the view in the Ninth

27

28                          - 14 -

Circuit.

The § 542(a) turnover obligation is oftentimes discussed in the context of a § 362(a) stay violation because the postpetition retention of estate property with knowledge of a bankruptcy case violates both §§ 542 and 362 of the Bankruptcy Code. Abrams v. Southwest Leasing and Rental, Inc. (In re Abrams), 217 B.R. 239, 242-43 (9th Cir. BAP 1991). Whereas § 542 provides the right to the return of estate property, § 362 provides the remedy for the recovery of costs and expenses associated with obtaining possession of estate property from the entity holding it. Id. As Abrams explains: "[T]he case law and the legislative history of § 362 indicate that Congress did not intend to place the burden on the bankruptcy estate to absorb the expense of potentially multiple turnover actions, at least not without providing a means to recover damages sustained as a consequence thereof." Id. at 243.

Abrams is significant for present purposes in at least two respects. First, it recognizes that Congress did not intend the estate to absorb the expense of recovering property of the estate because doing so diminishes the value of the recovered property to the estate. Second, it recognizes that costs and expenses incurred in the process of recovering property of the estate rest with the party holding the estate property. Therefore, in concluding that the Personal Property is not of inconsequential value and benefit the court gives no weight to Mr. Bigley's testimony regarding the expense associated with removal,

- 15 -

1  transportation, and delivery of the Personal Property.  Any

2  expense incurred in or associated with that process rests with

3  the Carter Trust.

4      That said, when considered in the context of the debtor's

5  testimony of value, Mr. Bigley's testimony regarding the current

6  value of the Personal Property as scrap is relevant to establish

7  that the value of the Personal Property has declined while in the

8  Carter Trust's possession.  In other words, the Personal Property

9  has dissipated.  And "[w]hen property that is subject to § 542(a)

10  has been dissipated, the statute (with exceptions of no relevance

11  here) still requires the entity who dissipated the property to

12  deliver ... and account for ... the value of such property[.]"

13  In re Pilate, 487 B.R. 345, 348 (Bankr. D.C. 2013) (internal

14  quotations omitted).  That is because § 542(a) provides for

15  alternative remedies of delivery of the property or delivery of

16  the property's value.  In re Gardner, 2015 WL 1579586, *2 (Bankr.

17  N.D. Ohio 2015) ("While the case law discussions on this issue

18  are wide-ranging and detailed, a key point is that the language

19  of § 542(a) permits a turnover action to proceed in the

20  alternative: not only for "such property" but also for the "value

21  of such property".); In re Morris, 2008 WL 819296, *7 (Bankr. D.

22  Kan. 2008) ("[Section 542(a)] establishes alternative remedies,

23  turnover of the property or accounting for its value.").

24

25  <u>Conclusion</u>

26      The evidence presented establishes by a preponderance that

27  the Carter Trust is an entity in possession of the Personal

28

1  Property, the Personal Property is property of the estate, the

2  debtor could use or sell the Personal Property, and the Personal

3  Property is not of inconsequential value or benefit.  Consistent

4  with § 542(a), that imposes an affirmative obligation on the

5  Carter Trust to deliver the Personal Property or its value to the

6  debtor.  Therefore, within thirty days of the entry of the

7  court's order consistent with this memorandum decision the Carter

8  Trust shall, at its election, either: (1) deliver the Personal

9  Property to the debtor at a location designated by the debtor;

10 or, alternatively, (2) deliver $54,588.00 to the debtor.  As

11 permitted by § 542(a) the court retains and reserves jurisdiction

12 over this matter to, if necessary, enter an appropriate judgment

13 consistent with its order.

14      The evidentiary hearing continued to October 30, 2018, at

15 9:30 a.m. will be vacated.

16      A separate order will issue.

17      Dated:  October 30, 2018.

18

19                              UNITED STATES BANKRUPTCY JUDGE

20

21

22

23

24

25

26

27

28

1

## INSTRUCTIONS TO CLERK OF COURT
## SERVICE LIST

2

3        The Clerk of Court is instructed to send the attached
document, via the BNC, to the following parties:

4
Lucas B. Garcia
251 Auburn Ravine Rd #107
5   Auburn CA 95603

6

Lawrence E. Skidmore
7   200 Auburn Folsom Road, Ste 305
Auburn CA 95603
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28